### THE BUCKEYE STATE.

### CARGO CARRIERS, Inc., v. THE BUCKEYE STATE et al.

### No. 2104.

District Court, W. D. New York.

Jan. 19, 1942.

See also, D.C., 39 F.Supp. 344.

Brown, Ely & Richards, of Buffalo, N. Y., for libellant.

Stanley & Otten, of Buffalo, N. Y., for respondent and claimant.

KNIGHT, District Judge.

This matter is on a hearing of exceptions of the respondents to the report of the Commissioner appointed to assess damages herein. Such report is a clear and comprehen-

sive statement of facts deemed established and the law applicable thereto. The respondent excepted to the report of the Commissioner in twenty-eight specific instances. They relate, however, to two general matters, namely (1) the allowable freight rate from Buffalo to Oswego, and (2) the method of computing the damages.

The libellant shipped on board M/S Buckeye State, owned and operated by Federal Motorship Corporation, 87,700 bushels No. 2 yellow corn, in apparent good order, for carriage to Oswego, New York, and consigned to itself. In transit the cargo was damaged by heat by the fault of the carrier. It was agreed by the parties that the cargo should be delivered at Buffalo and that the shipper should pay the freight to Oswego, New York.

The shipper claims damages of $15,376.-77, while the carrier says they amount to $11,031.53. The difference arises principally from the two items in dispute: the first is whether the cost of carriage of sound corn from Buffalo to Oswego should be based upon the rail rate of 6⅛ cents per bushel, as claimed by shipper, or upon a boat rate of 3¼ cents per bushel, stipulated in a charter of the Motorship made December 8, 1939, as claimed by carrier; the second is whether shipper or carrier should have the benefit of an advance in the market price of sound corn after the ship's arrival at Buffalo, and reflected in the sale on December 20, of 15,484 bushels, and in an offer made December 19 to purchase 70,481-54 bushels of damaged corn.

The bill of lading recites that the carriage of the property shall be subject, among others, to the following condition and limitation: "Sec. 5. The amount of loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the place and time of delivery under this bill of lading, including the freight charges, if paid."

"Where goods are delivered in a damaged condition, the damage sustained is the difference between their market value, if sound, and their market value in their unsound condition. Both values to be ascertained as of the time when the goods were, or should have been, delivered." The Compta, Fed. Cas. No. 3,070.

The market for corn at Oswego, the ultimate place of delivery, was quite limited, and, in any event, market prices were there dependent upon those at Buffalo, that being the nearest point where corn was bought and sold in quantity, plus the cost of transportation. Harris v. Panama R. Co., 58 N. Y. 660; Grand Tower Co. v. Phillips, 23 Wall. 471, 90 U.S. 471, 480, 23 L.Ed. 71.

The cargo would have reached Oswego, New York, on December 4, 1939, except for the agreement of the parties to allow the ship to discharge the cargo at Buffalo, New York, upon the shipper's agreement to pay the freight charges to Oswego.

The market values of No. 2 yellow corn, f. o. b. Buffalo, on the dates here involved were: December 4, 60⅝ cents per bushel; December 8, 61¾ cents; December 12, 61⅝ cents; December 19, 65⅞ cents; and December 20, 64½ cents.

On December 4, 1939, navigation had practically closed, and thereafter no vessels were available at Buffalo for the carriage of corn to Oswego, excepting in the single instance of M/S Buckeye State, chartered for carriage of corn to Oswego at 3¼ cents per bushel, by the libellant on December 8, 1939. It is undisputed that there was such charter and shipment.

The breach of contract of carriage by the carrier occurred on December 4, 1939, and on that date there was not available at Oswego 80,000 bushels of No. 2 yellow corn. The next nearest place where such goods were available was Buffalo, and the market price of such goods on December 4, 1939, was 60⅝ cents per bushel. This is not disputed. On December 4, 1939, the market price of corn at Oswego was dependent upon the market price at Buffalo, 60⅝ cents per bushel, plus the cost of transportation. On December 4, 1939, the only available means of transportation for such a cargo as here involved was by rail, and it is not disputed that such cost of transportation was 6⅛ cents per bushel. The libellant was entitled to his damages at Oswego, New York, as of December 4, 1939, and the undisputed evidence was that such damages were 60⅝ cents per bushel plus transportation, and the only available transportation at that time was rail transportation which was 6⅛ cents per bushel. The Commissioner has found that the charter of December 8, 1939, and subsequent shipment was not sufficient proof that such shipment was a substitute cargo, and in this he should be upheld. As an item of libellant's damages he should be allowed to include the rail freight as found by the Commissioner.

The Commissioner has religiously followed the rule laid down in The Compta,

Fed.Cas. No. 3,070, in determining the amount of damages to libellant. In The Compta the goods arrived in a damaged condition and were accepted by the shipper but were not sold until some time after the date of delivery. During the interim the value of sound goods had risen, and the court held that the proportion between sound goods and damaged goods on the actual date of sale would be the same as the proportion between the sound goods on date of delivery and damaged goods. The court then used this formula in ascertaining the value of the damaged goods on the date of delivery. Here the Commissioner has followed this formula except in instances where the difference would be negligible and which are not in dispute. I have examined the report of the Commissioner and the exceptions thereto, and the argument of counsel, and it is my opinion that the Commissioner has applied the proper formula in ascertaining the damage to libellant.

The report of the Commissioner is affirmed.